**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Dated: 02:57 PM January 5, 2016**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MARC RAYMOND TOW, | ) | CASE NO. 14-61665 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |

The United States Trustee ("UST") moved to dismiss Debtor's case under 11 U.S.C. § 707(a), pressing the court to find that Debtor's prepetition conduct demonstrated a lack of good faith sufficient to be deemed cause for dismissal. Debtor opposes dismissal. The parties agreed to submit the matter to the court on a joint stipulation of fact and briefs from each side.

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334. It is a statutorily core proceeding under 28 U.S.C. § 157 and the court has authority to make final entries. Venue in this district is appropriate under 11 U.S.C. § 1409. This memorandum of opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

**FACTS**

As previously stated, the parties submitted a joint stipulation of fact. (Jt. Stip. ECF No. 44) That stipulation is adopted in its entirety.[1] The following is a synopsis of the most pertinent facts underlying the court's decision.

Debtor was formerly an attorney and operated Marc Tow and Associates, a law practice, and EZ Access Funding LLC ("EZ Access"), a real estate investment company. EZ Access bought properties in Cuyahoga County and represented to potential investors that the properties would be rehabilitated and sold for a profit, and investors could share in the profit of that enterprise. Unfortunately, the properties EZ Access purchased were often distressed, sometimes abandoned, and many ended up in foreclosure. Debtor signed warranty deeds for transfers of real estate owned by EZ Access in his capacity as manager/member manager through 2010.

One property owned by EZ Access exploded, damaging nearby properties, including Duwest Tool and Die ("Duwest). That incident ultimately resulted in a $700,000 damage award in 2014 and Debtor and his companies were deemed 19.80% responsible.

On August 22, 2012, Debtor was indicted on charges stemming from operation of EZ Access. He eventually pled guilty to engaging in a pattern of corrupt activity with forfeiture specifications, theft and money laundering with forfeiture specifications. He received a five year prison sentence, agreed to pay $300,000 in restitution, and transferred interest in 194 properties to the Cleveland Land Bank. He is currently incarcerated. He was disbarred by the California state bar in 2012.

Debts included in Debtor's bankruptcy case include: approximately $2,000,000 in federal tax liabilities resulting from audits by the IRS, the $700,000 damage award, the $300,000 restitution award, and a $350,000 default judgment to Daniel Hasso, who obtained a $350,000 default judgment award on his complaint for fraudulent conveyance, conspiracy to commit a fraudulent conveyance, and alter ego.

**DISCUSSION**

UST moved to dismiss this case under 11 U.S.C. § 707(a), which allows the court to dismiss a case "for cause." As movant, UST bears the burden of proof, by a preponderance of the evidence, on a motion to dismiss. Grogan v. Garner, 498 U.S. 279 (1991); Simon v. Amir (In re Amir), 436 B.R. 1 (B.A.P. 6th Cir. 2010). Section 707(a) provides three examples of grounds constituting "cause." The list of three examples is not exclusive. Ind. Ins. Serv., Inc. v. Zick (In re Zick), 931 F.2d 1124 (6th Cir. 1991). Through Zick, the Sixth Circuit included lack of good faith as cause for dismissal under § 707(a).

---

1 The joint stipulation references numerous exhibits and the parties stipulated to admission. The court admits the exhibits, marked UST Exhibits 1-10.

2

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 changed the landscape of § 707. While § 707(a) was not materially altered, § 707(b) did undergo significant change. Now, § 707(b)(1) permits a court to dismiss the case of "an individual debtor . . . whose debts are primarily consumer debts . . . [if] . . . it finds that the granting of relief would be an abuse of the provisions of this chapter." Section 707(b)(2) presumes that a filing is abusive if a Debtor's disposable income, as calculated under the means test, exceeds the threshold amounts set forth in § 707(b)(2)(A)(i). Alternatively, when the presumption does not arise, a court may also consider bad faith or the totality of the circumstances as a basis for determining whether abuse exists and dismissal is warranted. 11 U.S.C. § 707(b)(3). Thus, bad faith has specifically been incorporated into the bankruptcy code as grounds for dismissal, leaving the court to consider whether bad faith under § 707(a) is now limited or narrowed.

Prior to BAPCPA, there was a split of authority on whether good faith was required for a chapter 7 filing. *Compare* In re Padilla, 222 F.3d 1184, 1194 (9th Cir. 2000) (noting good faith requirements under other chapters was absent in chapter 7 and cause under § 707(a) was more focused on technical or procedural issues while § 707(b) addressed other concerns) and Zick, 931 F.2d 1124 (finding bad faith could constitute cause for a § 707(a) dismissal). Since BAPCPA, more courts accept bad faith as cause for dismissal under § 707(a). In re Boca Village Ass'n, Inc., 422 B.R. 318, 322 (Bankr. S.D. Fla. 2009) (citing Padilla as the minority position); In re Mitchell, 357 B.R. 142 fn. 11 (Bankr. C.D. Cal. 2006) ("in light of the addition of § 707(b)(3) . . . bad faith now clearly constitutes grounds for dismissal"); In re Privada, Inc., 2008 WL 4692372 (Bankr. W.D. Tex. 2008) (declining argument that inclusion of bad faith under § 707(b)(3) is to the exclusion under § 707(a)); In re Peterson, 524 B.R. 808, 814 (Bankr. S.D. Ind. 2015) (stating a majority of courts still find bad faith to be cause for dismissal under § 707(a)).

For several reasons, this court finds no reason to diverge from Zick or the line of authority including bad faith as cause under § 707(a). First, courts operate under the presumption that Congress knows existing law when it passes legislation. Hall v. U.S., 132 S.Ct. 1882, 1889 (2012) (citation omitted). Accepting this proposition, Congress' failure to limit Zick constitutes acceptance of its holding. Second, § 707(a) and 707(b)(3) apply to different types of cases. Section 707(a) is broadly directed to "a case under this chapter" while § 707(b)(3) applies to cases filed by "an individual debtor under this chapter whose debts are primarily consumer debts . . . ." Since § 707(a) applies to all cases, not merely individual consumer cases, the incorporation of bad faith in § 707(b)(3) is not to the exclusion of a similar requirement under § 707(a). Additionally, one sister court viewed the change to § 707(b)(3) "as simply a codification of those pre-BAPCPA decisions which had recognized bad faith as a basis for dismissal." In re Gonyer, 383 B.R. 316, 320 (citing In re Oot, 368 B.R. 662 (Bankr. N.D. Ohio 2007)). Zick therefore remains the governing law for § 707(a) bad faith analysis.

In Zick, the debtor had a no compete agreement with Industrial Insurance Services, Inc. ("IIS") Shortly after voluntarily leaving IIS, he started a competing business. IIS' filed suit and was awarded $600,000 in mediation. A few days after the award issued, Zick filed a chapter 11 case, which later converted to chapter 7, and IIS moved to dismiss the case under

3

§ 707(a), arguing Zick's lack of good faith was cause for dismissal.

The Sixth Circuit agreed. To analyze whether there is a lack of good faith, it advised that the facts should be viewed on an ad hoc basis and must pass a smell test. Id. at 1128, 1129. Using the factual record developed by the bankruptcy court, it cited the following facts as a basis for Zick's lack of good faith: (1) the debtor manipulated his financial situation to a single creditor, (2) he made no attempt to change his lifestyle in order to repay the debt, (3) the petition was filed in direct response to the judgment, and (4) the filing was an unfair use of chapter 7. Id. at 1128.

In addition to the bankruptcy court's foundation, the Sixth Circuit also mentioned several other facts in affirming the finding of bad faith. First, Zick's income was $7,000 per month and he also had pension plan benefits, plus more income from his spouse. Second, he had personal property valued at $90,000. The Sixth Circuit opined that relief under the bankruptcy code should not be made available to the dishonest or non-needy. Further, even honest debtors should only be given a fresh start, not a head start. Id. at 1129. Although it reserved bad faith dismissals for egregious cases, it found that Zick's actions were a "malicious breach" of the employment agreement and upheld the dismissal. Id.

The facts of this case do not easily mesh with the Zick facts. It is not a single creditor case. There are four main creditors: the IRS, listed with nearly $2,000,000 in disputed liabilities; Cuyahoga County Probation, with a $300,000 restitution award; Daniel Hasso, holding a $300,000 judgment, and Duwest Tool & Die/Cincinnati Insurance Co., with a $700,000 judgment, 6.6% allocated to Debtor specifically and close to 20% allocated to Debtor and his companies combined. Four other creditors, with unsecured debts totaling about $55,000, are also identified in the schedules.

Debtor is currently incarcerated. He listed only one asset in his schedules, shares in Everlert, Inc., valued at $25.20 and the chapter 7 trustee deemed this to be a no-asset case. Much of Debtor's debt may not be dischargeable, including the IRS tax liabilities and his restitution judgment. Additionally, the bulk of the $700,000 judgment in favor of Duwest/Cincinnati Insurance Co. was allocated to others, not Debtor or his companies.

Since the facts do not fit squarely, it appears that the predominant question is whether Debtor's prepetition conduct is so repugnant that allowing him to obtain a discharge in this case would malign the bankruptcy system. UST's position suggests four categories of conduct answer this question affirmatively: (1) the IRS conducted an audit that drastically changed Debtor's tax liabilities, (2) the conduct underlying the Daniel Hasso judgment, and (3) Debtor's prepetition conduct that led to his incarceration, and (4) the explosion that resulted in the Duwest/Cincinnati Insurance Co. judgment. In defense, Debtor argues that this is not an extreme case warranting dismissal, nor do the facts show a lack of good faith. After due consideration, the court concludes that UST met its burden of proof by a preponderance of the evidence.

The facts before the court show a sustained pattern of fraudulent behavior by Debtor. The record is replete with allegations of Debtor's devotion to various scams and hustles for years, including Debtor's operation of EZ Access. Using investor funds, EZ Access bought distressed properties in the Cleveland area, presumably to produce income, but the properties mainly ended up abandoned or foreclosed. Debtor's operation of EZ Access resulted in criminal charges, including corrupt activity, theft, and money laundering, to which Debtor pled guilty. He is now serving jail time. After his plea, approximately one hundred ninety four (194) properties involved in the activities were transferred to the Cleveland Land Bank as part of the reckoning. At a minimum, this shows a disregard for investors, the law, and common decency.

The operation of EZ Access also had more specific, known repercussions. One unkept EZ Access property exploded after "urban mining" vandals removed gas line pipes, causing a serious explosion that damaged multiple properties, including the Duwest business facility. Duwest and Cincinnati Insurance Company were awarded $700,000. Approximately one-fifth, or 19.80%, of the judgment was allocated to Debtor or his companies,[2] at least in part for their failure to maintain the property.

Before EZ Access, Debtor was subject to another judgment in California, for $350,000 in favor of Daniel Hasso, involving a different business in questionable real estate activity. The Hasso complaint alleged that, starting in 1995, Debtor and a company he controlled, Mesa Verde, were part of a fraudulent real estate scheme. According to the complaint, Mesa Verde filed fictitious foreclosure actions in furtherance of the scheme and was maintained as a shell corporation to avoid liability. Judgment was rendered against Debtor and Mesa Verde by default after they failed to appear for trial in June 2013.

Intimations of other nefarious activity can be found in the exhibits provided by UST. For example, paragraphs twenty-five and twenty-six of the Duwest/Cincinnati Insurance Co. complaint indicate that in 2003, Debtor was involved in a securities scheme. The SEC filed a complaint and Debtor was subject to an injunction as a result. The complaint also contains an allegation that Debtor's associate in the EZ Access scheme, Michael Alexander fka/aka Michael Pedwell, "was convicted of insurance fraud as a result of staging a boating accident to fake his death in North Carolina." Debtor's numerous ties to dubious companies, people and activities permeate an odor of bad faith.

Other suggestions of dishonesty abound. Presently, Debtor is engaged in a challenging an IRS audit. The parties stipulated that the audit of Debtor's 2006 and 2007 returns resulted in vastly different figures, from Debtor receiving refunds of $62 and $1,492 to owing a total of approximately $2,000,000. Debtor was disbarred by the State of California in 2012.

The court cannot conclude that this case serves the purpose of providing an honest debtor with a fresh start. The bulk of Debtor's debt in this case is tied to either illegal or questionable activities. Without the benefit of knowing Debtor's intent, the court must rely on the record,

---

2 Approximately one-third (33%) of the judgment was allocated to Debtor, his companies, and two other individuals with some connection to Debtor.

and its reasonable inferences, to assess Debtor's intent in filing. Unfortunately for Debtor, the record contains nothing redemptive. The court therefore finds that this case was filed in bad faith and will be dismissed. A separate order will be issued immediately.

#       #       #

**Service List:**

Joseph C. Patituce
Patituce & Associates, LLC
26777 Lorain Road
Suite 708
North Olmsted, OH 44070

Derrick Rippy
Office of the US Trustee
H. M. Metzenbaum U.S. Courthouse
201 Superior Avenue
Suite 441
Cleveland, OH 44114

6